## UNITED STATES DISTRICT COURT

## FOR THE MIDDLE DISTRICT OF FLORIDA

## JACKSONVILLE DIVISION

ATAIN SPECIALTY INSURANCE
COMPANY,

      Plaintiff,

EVANSTON INSURANCE
COMPANY,

      Plaintiff-Intervenor

v.

T. DISNEY TRUCKING AND
GRADING, INC. et al.,

      Defendants.

Case No.: 3:21-cv-01097-CRK

OPINION AND ORDER RE:
CROSS-MOTIONS FOR SUMMARY
JUDGMENT

## INTRODUCTION

Before the Court are three motions for summary judgment concerning the obligations of insurer Atain Specialty Insurance Company ("Atain") and excess insurer Evanston Insurance Company ("Evanston") towards insured party T. Disney Trucking and Grading, Inc. ("T. Disney") arising from a construction accident.[1]  Each party requests declaratory relief establishing its obligations under the commercial general liability policies issued by Atain and Evanston to T. Disney.  For the following

---

[1] Also before the Court is T. Disney's motion to dismiss Evanston's intervening complaint.  See [T. Disney] Mot. Dismiss Am. Interv. Compl., Oct. 26, 2022, ECF No. 87; see also Evanston Am. Interv. Compl. ¶ 56, Oct. 12, 2022, ECF No. 84.  T. Disney's motion to dismiss is denied as moot.

**OPINION AND ORDER - 1**

Case No.: 3:21-cv-01097-CRK

reasons, Atain and Evanston's motions for summary judgment are granted, and T. Disney's motion for summary judgment is denied.

## BACKGROUND

The following facts are not in dispute.[2]   On July 28, 2020, T. Disney was involved in a construction project located off of S.R. 19 in Palatka, Florida.  See Compl. Ex. B ¶ 36, Sept. 13, 2022, ECF No. 77-2; see also T. Disney Answer ¶ 16, Sept. 27, 2022, ECF No. 79.   During the course of construction, several trucks involved in the project were stopped in the continuous left turn lane.  Compl. Ex. B ¶ 92; T. Disney Answer ¶ 24.   Carlos L. Diaz Figueras was one of the drivers stopped in the middle lane, as was Ruben Sanchez.  Compl. Ex. B ¶ 92; T. Disney Answer ¶ 25.  Diaz got out of his vehicle and walked to coordinate completion of deliveries with the other drivers.   Compl. Ex. B ¶ 92; T. Disney Answer ¶ 25.   While Diaz was standing and coordinating the deliveries, a tractor trailer hauling machinery was travelling in the opposite direction in an adjacent lane.  Compl. Ex. B ¶ 93; T. Disney Answer ¶ 24–25.  A metal piece from the tractor trailer's load struck Diaz as the truck was passing by, and killed him.  Compl. Ex. B ¶ 93; T. Disney Answer ¶ 26.   The

---

[2] T. Disney lists three "disputed facts" in its response to Atain's motion.  See T. Disney Resp. Pl.'s Mot. Summ. J. at 3–6, Apr. 5, 2023, ECF No. 119.  However, T. Disney is not disputing the facts, but rather Atain's characterization of Sanchez and Diaz as "independent contractors," and Atain's failure to mention the cause of Diaz' death.  See id.   Similarly, Atain lists one "disputed fact," which protests T. Disney's conclusion that Atain "owes" it attorney's fees.  See Atain Resp. Def. Mot. Summ. J. at 3, Apr. 25, 2023, ECF No. 139.  Because neither response identifies a material fact which is contested, summary judgment is appropriate.  See Wright & Miller, Fed. Prac. & Proc. Civ. § 2725.1, 2725.2 (4th ed.).

**OPINION AND ORDER - 2**

Case No.: 3:21-cv-01097-CRK

tractor trailer also collided with Sanchez, injuring him.  Compl. Ex. A ¶ 23, Sept. 13, 2022, ECF No. 77-1; T. Disney Answer ¶ 17.

At the time of the accident, T. Disney possessed commercial general liability coverage through a policy issued by Atain.  Compl. Ex. G at 1, Sept. 13, 2022, ECF No. 77-7; T. Disney Answer ¶ 36.  The policy provides that Atain will "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."  Compl. Ex. G at 69; T. Disney Answer ¶ 37.  The policy also specifies Atain has a "duty to defend the insured against any 'suit' seeking those damages."  Compl. Ex. G at 69; T. Disney Answer ¶ 37.  Coverage under the policy is subject to several exclusions, including the "auto exclusion" and "employer exclusion."  The auto exclusion provides that coverage does not apply to:

> (2) "Bodily injury" or "property damage" arising out of or in connection with any "auto" unless outlined below; or
>
> (3) "Bodily injury" or "property damage" arising out of or in connection with the "loading or unloading" of any aircraft, "auto" or watercraft by any insured unless as outlined below.
>
> This exclusion applies to "bodily injury" or "property damage" arising out of any aircraft, "auto" or watercraft, whether or not owned, maintained, used, rented, leased, hired, loaned, borrowed or entrusted to others or provided to another by any insured.

Compl. Ex. G at 40; T. Disney Answer ¶ 40.  The policy defines an "auto" as a "land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment."  Compl. Ex. G at 81; T. Disney Answer ¶ 36. Similarly, the employer exclusion excludes coverage for:

**OPINION AND ORDER - 3**

Case No.: 3:21-cv-01097-CRK

> "Bodily injury" to an "employee," subcontractor, employee of any subcontractor, "independent contractor," employee of any "independent contractor," "temporary worker," "leased worker," "volunteer worker" of any insured or any person performing work or services for any insured arising out of and in the course of employment by or service to any insured for which any insured may be held liable as an employer or in any other capacity;

Compl. Ex. G at 36; T. Disney Answer ¶ 36. The employer exclusion further specifies that "independent contractors," as used in the exclusion, also applies to "subcontractors and any employees of a subcontractor." Compl. Ex. G at 36; T. Disney Answer ¶ 36.

In addition to the Atain policy, T. Disney possesses an excess liability policy issued by Evanston. See Evanston Am. Interv. Compl. ¶ 56, Oct. 12, 2022, ECF No. 84; see also [T. Disney's] Mot. Dismiss ¶ 16, Oct. 26, 2022, ECF No. 87. The Evanston policy provides that Evanston "will pay those sums in excess of the limits [of the Atain policy], provided that the 'underlying insurance' also applies . . . ." Evanston Am. Interv. Compl. ¶ 58; [T. Disney's] Mot. Dismiss ¶ 18. The policy further provides that Evanston is subject to the same terms, conditions, and exclusion as the Atain policy. See Evanston Am. Interv. Compl. ¶ 58, 60, 61; see also [T. Disney's] Mot. Dismiss ¶ 19.

Following the accident, Sanchez and Laura E. Trujillo, as the personal representative of the Estate of Carlos L. Diaz Figueras ("the Estate") filed separate lawsuits against T. Disney. On December 2, 2020, Sanchez filed a negligence action, seeking damages from T. Disney for bodily injuries sustained during the accident, serving T. Disney on December 28, 2020. See Compl. Ex. A. On March 8, 2021, in

**OPINION AND ORDER - 4**

Case No.: 3:21-cv-01097-CRK

response to Sanchez' lawsuit, Atain issued a reservation of rights letter to T. Disney, stating that it could deny coverage under the policy, and that Atain would defend T. Disney subject to its reservations.  Compl. ¶ 30; T. Disney Answer ¶ 30.  The attorney appointed by Atain began to represent T. Disney in the Sanchez lawsuit on or about March 22, 2021.  T. Disney Answer at 15; Atain Resp. Def. Mot. Summ. J. at 3, Apr. 25, 2023, ECF No. 139.  On December 1, 2021, Atain claims the Estate sent it a policy limits demand letter prior to filing suit.  Compl. ¶ 20.  Atain responded to the policy letter by issuing a supplemental reservation of rights letter to T. Disney, again advising that coverage could be denied.  Compl. ¶ 32; T. Disney Answer ¶ 32.  On July 27, 2022, the Estate added T. Disney as a defendant in its lawsuit for wrongful death.  See Compl. Ex. B.  On August 3, 2022, Atain issued a second supplemental reservation of rights letter to T. Disney, again advising that coverage could be denied, and stating that Atain would defend T. Disney in the Estate's lawsuit.  Compl. ¶ 34; T. Disney Answer ¶ 34.

**Procedural History**

On September 13, 2022, Atain filed its fourth amended complaint against T. Disney, Sanchez, and the Estate, requesting declaratory judgment from the Court as to its obligations to defend and indemnify T. Disney in the two ongoing lawsuits.  See Compl. at 17–18.  On September 27, 2022, T. Disney and the Estate each filed counterclaims against Atain seeking, inter alia, a declaratory judgment that neither policy exclusion cited by Atain applies.  See T. Disney Answer at 22–23; [Estate] Answer and Affirm. Defenses Pl.'s Fourth Am. Compl. & Counterclaim, Sept. 27,

Case No.: 3:21-cv-01097-CRK

2022, ECF No. 80; Atain Answer [Estate's] Compl. & Counterclaim, Oct. 17, 2022, ECF No. 85; Atain Answer [T. Disney's] Counterclaim, Oct. 17, 2022, ECF No. 86. On October 12, 2022, Evanston filed an intervening complaint, requesting declaratory judgment that Evanston has no duty to defend or indemnify T. Disney in either the Sanchez or Estate lawsuit. See [Evanston's] Am. Interv. Compl. for Declaratory J., Oct. 12, 2022, ECF No. 84; see also [Estate's] Answer & Counterclaim Evanston's Interv. Compl., Oct. 26, 2022, ECF No. 88; Evanston's Answer to [Estate's] Counterclaim, Nov. 30, 2022, ECF No. 94. On October 26, 2022, T. Disney filed a motion to dismiss or stay parts of Evanston's intervening complaint for lack of subject matter jurisdiction. See [T. Disney's] Mot. Dismiss, Oct. 26, 2022, ECF No. 87; see also [Evanston's] Resp. [T. Disney's] Mot. Dismiss, Nov. 30, 2022, ECF No. 95; [T. Disney's] Reply Supp. Mot. Dismiss, Jan. 10, 2023, ECF No. 104.

On March 8, 2023, Atain moved for summary judgment, including summary judgment on T. Disney's and the Estate's counterclaims, requesting a declaration that it is not required to indemnify or defend T. Disney, and requesting to recoup its costs already incurred in T. Disney's defense. See [Atain] Mot. Summ. J. at 24–25, Mar. 8, 2023, ECF No. 111 ("Atain Mot."); see also [T. Disney's] Resp. Opp. Pl.'s Mot. Summ. J., Apr. 5, 2023, ECF No. 119 ("T. Disney Resp. Br."); [Sanchez'] Opp. Pl.'s Mot. Summ. J., Apr. 5, 2023, ECF No. 121; [Estate's] Opp. Pl.'s Mot. Summ. J., Apr. 24, 2023, ECF No. 137; [T. Disney's] Reply [Sanchez'] Resp. Opp. Pl.'s Mot. Summ. J., Apr. 19, 2023, ECF No. 127; [T. Disney's] Reply [Estate's] Resp. Opp. Pl.'s Mot. Summ. J., May 8, 2023, ECF No. 149. On April 5, 2023, T. Disney moved for summary

**OPINION AND ORDER – 6**

Case No.: 3:21-cv-01097-CRK

judgment, requesting a declaration that Atain must defend and indemnify it under the policy. See [T. Disney] Mot. Summ. J. at 25, Apr. 5, 2023, ECF No. 120 ("T. Disney Mot."); see also [Atain's] Resp. Def.'s Mot. Summ. J., Apr. 25, 2023, ECF No. 139; [Evanston's] Resp. Def.'s Mot. Summ. J., May 10, 2023, ECF No. 151; [T. Disney's] Reply [Atain's] Resp. Opp. Def.'s Mot. Summ. J., May 23, 2023, ECF No. 157; [T. Disney's] Reply [Evanston's] Resp. Opp. Def.'s Mot. Summ. J., May 24, 2023, ECF No. 158. T. Disney also requests that the Court enter summary judgment in its favor on its counterclaim and Evanston's intervening complaint, award it $9,190.98 in attorneys' fees for its initial defense of the Sanchez lawsuit, and award it reasonable costs and attorney's fees. See T. Disney Mot. at 25. On May 24, 2023, Evanston moved for summary judgment on its claim as well as T. Disney's and the Estate's counterclaims, requesting a declaration that Evanston has no duty to defend or indemnify T. Disney pursuant to the policy exclusions. See [Evanston] Mot. Summ. J. at 5, May 24, 2023, ECF No. 159 ("Evanston Mot."); see also [T. Disney's] Resp. [Evanston's] Mot. Summ. J., July 5, 2023, ECF No. 163; [Estate's] Resp. [Evanston's] Mot. Summ. J., June 29, 2023, ECF No. 162; [Evanston's] Reply [T. Disney's] Resp. Opp. [Evanston's] Mot. Summ. J., July 7, 2023, ECF No. 164; [Evanston's] Reply [Estate's] Resp. Opp. [Evanston's] Mot. Summ. J., July 7, 2023, ECF No. 165. All three summary judgment motions have been fully briefed.

**OPINION AND ORDER - 7**

Case No.: 3:21-cv-01097-CRK

## JURISDICTION AND APPLICABLE LAW

The Court has jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a).

The Court will grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Issues of fact are genuine "only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). A fact is "material" if it may affect the outcome of the suit under governing law. See id. In order to survive summary judgment, a nonmoving party must set forth specific facts showing there is a genuine issue for trial. See Johnson v. New Destiny Christian Ctr. Church, Inc., 826 F. App'x 766, 770 (11th Cir. 2020) (citing Anderson, 477 U.S. at 249–50).

This action was initiated on the basis of diversity of citizenship, and therefore Florida law applies to any issues not governed by the Constitution or treaties of the United States or acts of Congress. See Mid-Continent Cas. Co. v. Am. Pride Bldg. Co., LLC, 601 F.3d 1143, 1148 (11th Cir. 2010); see also 28 U.S.C. § 1652 (2018).

## DISCUSSION

The Court considers three cross-motions for summary judgment requesting declaratory relief. The parties' motions raise three issues: (1) whether Atain and Evanston have a duty to defend T. Disney (2) whether Atain and Evanston have a duty to indemnify T. Disney, and (3) whether any party should be awarded attorneys'

**OPINION AND ORDER - 8**

Case No.: 3:21-cv-01097-CRK

fees.  The material facts are not disputed.  As a preliminary matter, T. Disney argues that some of the claims are not ripe.  See T. Disney Mot. at 22–23.  For the following reasons, the Court concludes that all of the claims are ripe, grants Atain and Evanston's motions, and denies T. Disney's motion.

## I.    Ripeness

T. Disney argues that Evanston's request for declaratory judgment on both its duty to defend and its duty to indemnify is premature.  Evanston argues that there is a justiciable controversy regarding its duty to defend.  See [Evanston's] Resp. Def.'s Mot. Summ. J. 1t 19–20, May 10, 2023, ECF No. 151.  For the following reasons, both of Evanston's and Atain's claims are ripe for resolution through declaratory judgment.

The Court has subject matter jurisdiction over Evanston's and Atain's claims pursuant to 28 U.S.C. § 1332 and may issue a declaratory judgment pursuant to 28 U.S.C. § 2201.  Nonetheless, generally, a claim for indemnification is not ripe for adjudication if there has not been a resolution of the underlying claim.  See Mid-Continent Cas. Co. v. Delacruz Drywall Plastering & Stucco, Inc., 766 Fed. Appx. 768, 770–71 (11th Cir. 2019).  However, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, et seq., courts determine whether an actual case or controversy exists for ripeness purposes on a case-by-case basis.  See Hendrix v. Poonai, 662 F.2d 719, 721–22 (11th Cir. 1981).  A controversy exists when "the facts alleged, under all the circumstances, show that there is a substantial controversy . . . of sufficient

Case No.: 3:21-cv-01097-CRK

immediacy and reality to warrant the issuance of a declaratory judgment." <u>Maryland Cas. Co. v. Pacific Coal & Oil Co.</u>, 312 U.S. 270, 273 (1941) (citation omitted).

The Eleventh Circuit has recognized "[t]hat the liability may be contingent does not necessarily defeat jurisdiction of a declaratory judgment action." <u>GTE Directories Pub. Corp. v. Trimen America, Inc.</u>, 67 F.3d 1563, 1569 (11th Cir. 1995) (citation omitted); <u>see also</u> <u>Hous. Specialty Ins. Co. v. Titleworks of Sw. Fla., Inc.</u>, No. 2:15-cv-219, 2015 WL 5599175 at *7–*11 (M.D. Fla. 2015) (declaratory judgment appropriate when allegations necessarily sought indemnification under a liability policy).  The Court further explained that:

> It is clear that in some instances a declaratory judgment is proper even though there are future contingencies that will determine whether a controversy ever actually becomes real. The familiar type of suit in which a liability insurer seeks a declaration that it will not be liable to indemnify an insured person for any damages the injured person may recover against the insured is an example. The injured person may not sue or he may not obtain a judgment against the insured, but there is held to be sufficient controversy between the insurer and the injured person that a declaratory judgment is permissible.

<u>Id.</u> (quoting Wright, Miller & Kane, Fed. Prac. & Proc. Civ. § 2757 (2nd ed.)).

T. Disney only explicitly opposes as premature Evanston's request for declaratory judgment on its duty to defend or indemnify.  <u>See</u> T. Disney Mot. at 22–23.  However, the Court necessarily addresses whether either indemnification claim is ripe.  Although Atain does not expressly state that it is seeking a judgment with respect to "indemnity," the content of Atain's complaint and its motion for summary judgment require that the Court rule on this issue:

> This action is brought pursuant to 28 U.S.C. § 2201 and seeks declaratory relief as to Atain's obligations for the Underlying Lawsuit to

**OPINION AND ORDER - 10**

Case No.: 3:21-cv-01097-CRK

> the Insured Party, or any of the other potential defendants, under a policy of insurance issued to the Insured Party. Atain is uncertain as to its duties, rights, and obligations and files this declaratory judgment action to resolve questions of coverage under the insurance policy, including its duty to defend and/or indemnify the Insured Party in the Underlying Lawsuit. An actual and justiciable dispute over those duties, rights, and obligations exists between the parties.

Compl. ¶ 13. Additionally, in its motion for summary judgment, Atain asks the Court to "issue a declaratory ruling that Atain's Policy does not provide coverage for the Underlying Lawsuits." See Atain Mot. at 25. Therefore, consistent with Atain's request for relief, the Court considers whether Atain, and Evanston have a duty to defend and indemnify T. Disney. The Court also considers whether Evanston's request for a ruling on its duty to defend is ripe, and whether Atain's and Evanston's claims regarding indemnification are ripe.

The facts before the Court demonstrate the existence of a controversy which warrants the issuance of declaratory judgment. Both Sanchez and the Estate have affirmatively sought coverage for losses, and Atain and Evanston have denied that any coverage is due. See [Estate] Answer and Affirm. Defenses Pl.'s Fourth Am. Compl. & Counterclaim at 20, Sept. 27, 2022, ECF No. 80 (requesting a declaration that "the Loss is covered under the Policy"); T. Disney Answer Ex. 5, Sept. 27, 2022, ECF No. 79-5 (letter denial of coverage request for Sanchez lawsuit); Atain Mot. at 24–25; Evanston Mot. at 2–5. Similarly, the Estate has asserted losses against Evanston by counterclaim and argued that Evanston is obligated to defend T. Disney. See [Estate] Answer and Affirm. Defenses [Evanston's] Am. Interv. Compl. at 27, Oct. 26, 2022, ECF No. 88. Both Sanchez and the Estate have commenced actions against

**OPINION AND ORDER – 11**

Case No.: 3:21-cv-01097-CRK

T. Disney, see Compl. Ex. B; Compl. Ex. C, which in turn has argued that Atain and Evanston must both defend and indemnify it for any losses resulting from the lawsuits, see T. Disney Mot. at 25. These facts show the existence of a real, substantial controversy between the parties which is ripe for resolution. See Maryland Cas. Co., 312 U.S. at 273, see, also e.g., Titleworks of Sw. Fla., 2015 WL 5599175 at *9–*10 (finding that the existence of multiple contingencies did not undermine the "practical likelihood" that the insured would seek recovery from the insurer). Here, there have already been demands on the insurer to defend and indemnify. See T. Disney Mot. at 23; see also [Estate] Answer and Affirm. Defenses Pl.'s Fourth Am. Compl. & Counterclaim at 20, Sept. 27, 2022, ECF No. 80; T. Disney Answer Ex. 5, Sept. 27, 2022, ECF No. 79-5. If there were a duty to defend, it is possible that it would be premature to issue a declaratory judgment as to indemnification, as the uncertainty regarding liability might make the indemnification issue too remote. However, because neither the Sanchez' nor the Estate's complaint alleges facts "which would trigger a duty to indemnify," the controversy here is ripe. Northland Cas. Co. v. HBE Corp., 160 F. Supp. 2d 1348, 1360 (M.D. Fla. 2001) Thus, this controversy is ripe for resolution through a declaratory judgment.

## II.   Duty to Defend

The parties dispute whether Atain and Evanston have a duty to defend T. Disney against the Sanchez and Estate lawsuits. Atain argues that it has no duty to defend because the facts in the Estate's and Sanchez' complaints clearly show that

**OPINION AND ORDER - 12**

Case No.: 3:21-cv-01097-CRK

coverage would be precluded under the auto and employee exclusions.  See Atain Mot. at 14–22.  T. Disney counters that the Sanchez and Estate complaints, as the governing pleadings, contain insufficient factual content to show that either exclusion applies.  See T. Disney Mot. at 15–22.  Evanston supports Atain's arguments.  See Evanston Mot. at 2–5.  For the following reasons, Atain and Evanston have no duty to defend T. Disney.[3]

### A.    Legal Framework for Duty to Defend

An insurer's duty to defend an insured is distinct from, and broader than, the duty to indemnify.  See Allstate Ins. Co. v. RJT Enterprises, Inc., 692 So.2d 142, 144 (Fla. 1997); see also Lime Tree Vill. Cmty. Club Ass'n v. State Farm Gen. Ins. Co., 980 F.2d 1402, 1405 (11th Cir. 1993).  The duty to defend is established when the underlying complaint alleges facts that "fairly and potentially" bring the suit within policy coverage.  See Jones v. Fla. Ins. Guar. Ass'n, 908 So.2d 435, 442–43 (Fla. 2005).  Because the duty to defend is separate from the duty to indemnify, the insurer may be required to defend a suit even though the facts later reveal there is no coverage for the claims.  See Trizec Props., Inc. v. Biltmore Constr. Co., Inc., 767 F.2d 810, 812 (11th Cir. 1985).  Any doubts regarding the duty to defend must be resolved in favor of the insured.  See Lime Tree Vill., 980 F.2d at 1405.  Exclusionary clauses are

---

[3] As an excess insurer, Evanston has no duty to defend or indemnify T. Disney unless the limits of the Atain policy have been reached, and the Court determines that Atain also has a duty to defend or indemnify.  See Evanston's Am. Interv. Compl. for Declaratory J. at ¶¶ 56–58, Oct. 12, 2022, ECF No. 84.  The Court determines that Atain has no duty to defend or indemnify.  For these reasons, Evanston also has no duty to defend or indemnify.

**OPINION AND ORDER - 13**

Case No.: 3:21-cv-01097-CRK

generally interpreted strictly in favor of the insured.  See Westmoreland v. Lumbermens Mut. Cas. Co., 704 So. 2d 176, 179 (Fla. 4th Dist. Ct. App. 1997).

Generally, the allegations in the underlying complaint determine whether an insurer has a duty to defend a claim.  See Nat'l Union Fire & Ins. Co. v. Lenox Liquors, Inc., 358 So.2d 533, 536 (Fla. 1997).  However, courts may consider uncontroverted facts that would not normally be alleged in the underlying complaint, or that the plaintiff would not likely know at the time of filing suit.  See Composite Structures Inc. v. Cont'l Ins. Co., 560 F. App'x 861, 865 (11th Cir. 2014).  Thus, "[i]f uncontroverted facts on the record place a claim outside of coverage, and the claimant makes no attempt to plead the fact creating coverage or suggest the existence of evidence establishing coverage," there is no duty to defend.  Nationwide Mut. Fire Ins. Co. v. Keen, 658 So. 2d 1101, 1103 (Fla. 4th Dist. Ct. App. 1995).

## B.     The Auto Exclusion

Atain argues that it has no duty to defend because coverage is precluded under the auto exclusion.  See Atain Mot. at 14–19; see also Evanston Mot. at 2–5. T. Disney counters that the Sanchez and Estate complaints contain insufficient factual content to show that the auto exclusion applies.  See T. Disney Mot. at 19–22.  For the following reasons, the auto exclusion applies.

The auto exclusion provides in pertinent part that it extends to "bodily injury" or "property damage" arising out of any aircraft, "auto" or watercraft, whether or not owned, maintained, used, rented, leased, hired, loaned, borrowed or entrusted to others or provided to another by any insured.  Compl. Ex. G at 40.  The policy defines

**OPINION AND ORDER - 14**

Case No.: 3:21-cv-01097-CRK

an "auto" as a "land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment." Id. at 81. The policy further specifies that the exclusion applies whether or not the "auto" is owned, leased, rented or otherwise provided to the insured. Id. at 40. The operative phrases "arising out of" and "in connection with" are not defined in the policy; however, these phrases encompass a range of scenarios in which injury was related to an auto. See Taurus Holdings, Inc. v. United States Fid. & Guar. Co., 913 So. 2d 528, 533 (Fla. 2005) ("arising out of" in the context of auto coverage requires "some level of causation greater than coincidence"); see also Government Emples. Ins. Co. v. Novak, 453 So. 2d 1116, 1119 (Fla. 1984) ("It is well settled that "arising out of" does not mean "proximately caused by," but has a much broader meaning. All that is required is some nexus between the motor vehicle and the injury").

In Martinez, for example, a concrete driveway collapsed while the oil was being changed in an insured person's vehicle. See Martinez v. Citizens Property Insurance Corp., 982 So.2d 57, 58 (Fla. 3d Dist. Ct. App. 2008). The court held that the automobile was a mere "instrumentality" and lacked sufficient causal connection to the injuries to fall within the auto exclusion. See id. at 59. Similarly, in Almayor v. State Farm Fire & Casualty Co., 613 So.2d 526, 527 (Fla. 3d Dist. Ct. App. 1993), a plaintiff was injured in an explosion caused when a lit cigarette ignited gas the plaintiff siphoned out of a car before making repairs. In Almayor, the court held that that auto was a "legally remote source of a component, the gasoline, which was itself harmless until acted upon by the insured's negligence." Id.

**OPINION AND ORDER – 15**

Case No.: 3:21-cv-01097-CRK

Here, the facts are distinguishable from both <u>Martinez</u> and <u>Almayor</u>.   In <u>Martinez</u> for example, an auto caused the collapse of a driveway; however, any other sufficiently heavy object could have caused the collapse, as the fault was undisputedly with the driveway itself.  <u>See</u> <u>Martinez</u>, 982 So.2d at 58.  The present circumstances are the reverse.  Diaz was struck by a piece of metal being carried by a moving tractor trailer.  <u>See</u> Compl. Ex. B ¶ 36; T. Disney Answer ¶ 26; T. Disney Resp. Br. at 6.  Sanchez was struck and injured by the tractor trailer itself.  <u>See</u> Compl. Ex. A ¶¶ 21, 23; <u>see also</u> T. Disney Mot. ¶ 5.  Sanchez' and the Estate's complaints both invoke the operation of a vehicle as the cause of harm.   <u>See</u> Compl. Ex. A, ¶ 23 ("At the aforestated time and place, the Defendant, Billy W. Murray, negligently operated and/or maintained the motor vehicle so that it collided with the Plaintiff Ruben Sanchez's person and vehicle"); <u>see also</u> Compl. Ex. B, ¶ 23 ("a tractor trailer hauling a machinery load was travelling in the opposite direction in the adjacent lane on S.R. 19, and a metal piece from the load hit Carlos L. Diaz Figueras . . .").

T. Disney argues that "the Underlying Lawsuits involve no 'auto.'"[4]  T. Disney Mot. at 21.  Specifically with respect to Diaz, T. Disney argues that no auto was involved because it was a metal piece from the trailer's load that struck him.  <u>See</u> T.

---

[4] T. Disney also briefly argues that the exclusion does not apply because there was no auto "owned or controlled" by T. Disney involved in the accident.  T. Disney Mot. at 22.  However, the policy does not specify that T. Disney must own or control the involved auto for the exclusion to apply.  To the contrary, the policy specifies that the auto exclusion applies to any auto "whether or not owned, maintained, used, rented, leased, hired, loaned, borrowed or entrusted to others."  Compl. Ex. G at 40. Therefore, it is irrelevant that the tractor trailer was not owned by T. Disney for the purposes of the exclusion.

**OPINION AND ORDER - 16**

Case No.: 3:21-cv-01097-CRK

Disney Compl. at 19–21.   However, T. Disney does not allege, and the facts do not suggest that the unspecified "metal piece" from the load which struck Diaz would have caused an injury regardless of the presence of a tractor trailer.   See Compl. Ex. B ¶ 36; T. Disney Mot. at 22.   Here the interchangeable "instrumentality" was the metal piece, not the auto.   Although any doubts regarding the duty to defend must be decided in favor of the insured, see Lime Tree Vill., 980 F.2d at 1405, no ambiguity in the auto exclusion raises such a doubt. Therefore, because coverage is precluded on the face of the complaints due to the auto exclusion, Atain and Evanston have no duty to defend T. Disney in either lawsuit.

### C.     The Employee Exclusion

Atain argues that it has no duty to defend because coverage is precluded under the employee exclusion.   See Atain Mot. at 19–23; see also Evanston Mot. at 2–5.   T. Disney counters that the Sanchez and Estate complaints contain insufficient factual content to show that the employee exclusion applies.   See T. Disney Mot. at 15–19. For the following reasons, the employee exclusion applies.[5]

The employee exclusion applies to direct relationships, such as T. Disney employees, as well as attenuated relationships, such as "any person providing work or services for any insured."   Compl. Ex. G at 36.   The policy states that coverage is excluded for bodily injury to an "employee, subcontractor, employee of any

---

[5] If the Court concludes that Atain has no duty to defend under the auto exclusion, Atain argues that the Court need not address T. Disney's alternate argument on insufficiency of support for the employee exclusion.   See Atain Mot. at 19.   The Court nevertheless addresses this argument for completeness.

**OPINION AND ORDER – 17**

Case No.: 3:21-cv-01097-CRK

subcontractor, independent contractor, employee of any independent contractor . . .

or any person performing work or services for any insured arising out of and in the

course of employment by or service to any insured." Compl. Ex. G. at 36. The policy

also specifies that the phrase "independent contractors" includes "subcontractors and

any employees of a subcontractor." Id. The language of this employee exclusion is

broad, excluding coverage for a spectrum of potential working relationships with T.

Disney.

Here, the independent contractor agreements unambiguously establish that

Diaz and Sanchez were performing work for T. Disney. See [Atain] Answer to

Counterclaim Ex. 1 at 14, Oct. 17, 2022, ECF No. 86-1; see also Compl. Ex. C at 2–3,

Sept. 13, 2022, ECF No. 77-3. These agreements are referenced by the allegations in

the underlying lawsuits, and T. Disney does not contest their authenticity. See T.

Disney Mot. at 15–19; T. Disney Resp. Br. at 3–5. Uncontroverted facts on the record

which establish a lack of coverage may be considered, even if such facts are not

included in the complaint. See, e.g., Nationwide Mut. Fire Ins. Co. v. Keen, 658 So.

2d 1101, 1103 (Fla. 4th Dist. Ct. App. 1995) (uncontroverted fact that claimant used a

40-hp engine excluded coverage, despite absence of fact in complaint); Acosta, Inc. v.

Nat'l Union Fire Ins. Co., 39 So. 3d 565, 574–75 (Fla. Dist. Ct. App. 2010) (duty to

defend nullified by result of prior litigation which was not referenced in complaint);

Stephens v. Mid-Continent Cas. Co., 915 F. Supp. 2d 1320, 1333–34 (Fla. So. Dist. Ct.

2013) (employee exclusion applied when claimant did not assert employment

**OPINION AND ORDER - 18**

Case No.: 3:21-cv-01097-CRK

relationship in complaint, but admitted that he had been hired to build on insured premises).

The uncontroverted facts of the accident are similar to the fact pattern in <u>Mid-Continent</u>, in which the court considered suggestive language in the complaint, as well as uncontroverted extrinsic evidence. <u>See</u> <u>Mid-Continent</u>, 915 F. Supp. 2d at 1333. There is no dispute that Diaz and Sanchez were making deliveries in a T. Disney work zone, <u>see</u> Compl. Ex. B ¶ 91–93; ; Compl. Ex. A ¶ 12, 15, 23; T. Disney Answer ¶ 24–25, which by itself establishes that both men were "providing work or services for the insured," per the policy. Compl. Ex. G at 36. Additionally, as in <u>Keen</u>, the Court may consider extrinsic evidence, such as the independent contractor agreements, which are uncontroverted and preclude coverage. <u>See</u> <u>Keen</u>, 658 So. 2d at 1103.

Sanchez and Diaz stopped their vehicles in the middle lane of S.R. 19 in a work zone operated by T. Disney. <u>See</u> Compl. Ex. B ¶ 64, 85, 92; <u>see also</u> Compl. Ex. A ¶ 12, 15, 23. Diaz then got out of his truck to "coordinate completion of the deliveries at the Construction Project as instructed" with Sanchez and the other driver. Compl. Ex B. ¶ 92–93. T. Disney states that as "members of the public at large," Diaz and Sanchez should be covered under the policy. <u>See</u> T. Disney Mot. at 19. This characterization of Sanchez and Diaz is contradicted by the undisputed facts, which show that Diaz and Sanchez were driving trucks under contract with T. Disney, in a T. Disney work zone, to complete deliveries to a T. Disney construction project. <u>See</u> Compl. Ex. B ¶ 91–93; Compl. Ex. A ¶ 12, 15, 23; T. Disney Answer ¶ 16–18. From

**OPINION AND ORDER - 19**

Case No.: 3:21-cv-01097-CRK

these facts, no trier of fact could reasonably conclude that Sanchez and Diaz were "members of the public" who happened to be injured while stopping trucks near a T. Disney worksite.  Regardless of the exact contractual nature of their relationship with T. Disney, the facts show that Sanchez and Diaz were "providing work or services for the insured."  Compl. Ex. G at 36.

Additionally, T. Disney conflates the scope of the employee exclusion with the existence of a personal contractual relationship.  T. Disney argues that Sanchez and Diaz, individually, were not employees or independent contractors of T. Disney.  <u>See</u> T. Disney Mot. at 16–19.  Therefore, T. Disney argues, the agreements are merely evidence of an independent contractor relationship, and do not establish without dispute that both men were contractors.  <u>See</u> T. Disney Resp. at 5; <u>see also</u> [Estate's] Opp. Pl.'s Mot. Summ. J. at 5, Apr. 24, 2023, ECF No. 137.  Concerning the Estate's lawsuit, for example, T. Disney states that Diaz "in his individual capacity was not an employee, contractor, or independent contractor [of T. Disney]."  T. Disney Mot. at 17 (quoting Compl. Ex. B ¶ 51).  However, Atain does not allege that Sanchez and Diaz were employees or contractors in their individual capacity.  Rather, Atain points to the independent contractor agreements to show that Sanchez and Diaz through their respective companies La Cidra Corp. and Diaz-Trujillo Corp. were providing services to T. Disney when the accident occurred.  <u>See</u> Atain Compl. at 19–20.  According to the "Independent Contractor Agreement" signed and initialed by Sanchez, the company "La Cidra Trucking Corp." agreed to supply trucking services to T. Disney as of July 24, 2020.  <u>See</u> [Atain] Answer to Counterclaim Ex. 1 at 14, Oct.

**OPINION AND ORDER - 20**

Case No.: 3:21-cv-01097-CRK

17, 2022, ECF No. 86-1.  On the agreement, Sanchez gives his title as "La Cidra trucking corp. (president)," and the "driver name" field in the agreement is filled out "Ruben Sanchez."  See id. at 14, 15.  T. Disney protests Atain's characterization of Sanchez' contractor status based on this agreement, but does not dispute the agreement's authenticity.  See T. Disney Resp. Br. at 3–5.  Similarly, according to an identical "Independent Contractor Agreement" signed and initialed by Diaz, a company named "Diaz-Trujillo Corp." began supplying trucking services to T. Disney on July 29, 2019.  See Compl. Ex. C at 2–3, Sept. 13, 2022, ECF No. 77-3.  Diaz is listed as the company's "owner" on the agreement, and he is also listed as the driver. See id.  Again, T. Disney contests whether this agreement establishes that Diaz was an independent contractor of T. Disney, but does not dispute its authenticity or applicability.  See T. Disney Resp. Br. at 3–5.  Therefore, considering both the facts alleged in the underlying complaints and the uncontroverted contractor agreements on the record, see T. Disney Resp. Br. at 3–5, the Court concludes that Atain and Evanston have no duty to defend T. Disney because of the employee exclusion.

## III.   Duty to Indemnify

Atain argues that the "auto exclusion" and "employee exclusion" apply pursuant to the language of the policy, and therefore it has no duty to indemnify T. Disney for the potential costs of the Sanchez and Estate lawsuits.  See Atain Mot. at 14–22.  T. Disney counters that neither exclusion applies, based on the facts of the accident.  See T. Disney Mot. at 15–22.  Evanston reiterates Atain's arguments, and See Evanston Mot. at 2–5; [T. Disney's] Resp. [Evanston's] Mot. Summ. J., July 5,

**OPINION AND ORDER - 21**

Case No.: 3:21-cv-01097-CRK

2023, ECF No. 163.  For the following reasons, the indemnity dispute is ripe and Atain and Evanston have no duty to indemnify T. Disney.

### A.    The Auto Exclusion

The parties dispute whether the "auto exclusion" applies to damages resulting from the Estate's or Sanchez' lawsuit.  <u>See</u> Atain Mot. at 15–19; T. Disney Mot. at 19–22.  Atain argues that it makes no difference whether Diaz was stuck by the tractor trailer, or part of the load being carried by the tractor trailer, as in either case the accident involved an "auto."  <u>See</u> Atain Mot. at 18.  T. Disney argues that because a metal piece sticking out of the tractor trailer, and not the trailer itself, struck Diaz the auto was "a mere instrumentality of the injuries."  <u>See</u> T. Disney Mot. at 22.  The plain language of the policy bars coverage for injury in connection with "any auto," and Diaz' and Sanchez' accidents were directly connected with an "auto."

As previously explained, it is well-settled that an insurer's duty to indemnify is narrower than its duty to defend, and that an insurer need only indemnify its insured for occurrences covered by the policy.  <u>See EmbroidMe.com, Inc. v. Travelers Prop. Cas. Co. of Am.</u>, 845 F.3d 1099, 1107 (11th Cir. 2017).  An insurance policy is a contract, and therefore interpretation of an insurance policy is a question of law.  <u>See id.</u>  First, the policy must be construed in accordance with its plain language.  <u>See Chandler v. Geico Indem. Co.</u>, 78 So. 3d 1293, 1300 (Fla. 2011).  If the policy language is "susceptible to more than one reasonable interpretation . . . the insurance policy is considered ambiguous."  <u>Id.</u> (quoting <u>Auto-Owners Ins. Co. v. Anderson</u>, 756 So. 2d 29, 34 (Fla. 2000)).  Any ambiguous language is construed against the drafter and in

Case No.: 3:21-cv-01097-CRK

favor of the insured.  See id.  However, ambiguity does not exist solely because an insurance contract is complex and requires analysis to interpret it.  See General Star Indem. v. W. Fla. Vill. Inn, 874 So. 2d 26, 30 (Fla. 2d Dist. Ct. App.).

The policy states that "[t]his insurance does not apply to: (2) 'Bodily injury' or 'property damage' arising out of or in connection with any 'auto,' unless as outlined below."  Compl. Ex. G at 40.  The policy defines an "auto" as a "land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment."  Id. at 81.  The phrases "arising out of" and "in connection with" encompass a range of scenarios in which injury was related to an auto.  See Taurus Holdings, 913 So. 2d at 533 ("arising out of" in the context of auto coverage requires "some level of causation greater than coincidence"); see also Novak, 453 So. 2d at 1119 ("It is well settled that 'arising out of' does not mean 'proximately caused by,' but has a much broader meaning.  All that is required is some nexus between the motor vehicle and the injury").  Here, as previously discussed, it is undisputed that Diaz was struck by a piece of metal being carried by a moving tractor trailer, and Sanchez was struck by the truck itself.  See Compl. Ex. B ¶ 21, 23, 36; T. Disney Answer ¶ 26; T. Disney Resp. Br. at 6; T. Disney Mot. ¶ 5.  Therefore, according to the plain meaning of the policy terms, Diaz' and Sanchez' injuries were occurrences both "arising out of" and "in connection with" the auto carrying the load.  See Chandler, 78 So. 3d 1293 at 1300.

**OPINION AND ORDER - 23**

Case No.: 3:21-cv-01097-CRK

### B.      The Employee Exclusion

The parties dispute whether the employee exclusion applies.  See Atain Mot. at 19–22; T. Disney Mot. at 15–19; Evanston Mot. at 2–3.  Atain argues that the exclusion applies because both Sanchez and Diaz were independent contractors for T. Disney, as evidenced by their contractor agreements.  See Atain Mot. at 19–22.  T. Disney argues that the pleadings allege no facts showing that Sanchez or Diaz were employees or contractors at the time of the accident.  See T. Disney Mot. at 15–19. Because the uncontested facts demonstrate that Sanchez and Diaz were performing work for T. Disney through their respective companies, the employee exclusion applies.

The employee exclusion applies to direct relationships, such as T. Disney employees, as well as attenuated relationships, such as "any person providing work or services for any insured."  Compl. Ex. G at 36.  The policy states that coverage is excluded for bodily injury to an "employee, subcontractor, employee of any subcontractor, independent contractor, employee of any independent contractor . . . or any person performing work or services for any insured arising out of and in the course of employment by or service to any insured."  Id.  The policy also specifies that the phrase "independent contractors" includes "subcontractors and any employees of a subcontractor."  Id.  The language of the employee exclusion is broad, excluding coverage for a spectrum of potential working relationships with T. Disney.

As previously discussed, the undisputed facts, namely that both Sanchez and Diaz were coordinating deliveries to a T. Disney jobsite, contradicts T. Disney's

**OPINION AND ORDER - 24**

Case No.: 3:21-cv-01097-CRK

characterization of both men as "members of the public at large." See T. Disney Mot. at 19.  T. Disney argues that there is insufficient evidence to show that Diaz or Sanchez were employees or contractors for T. Disney when the accident occurred.  See id. at 16–19.  However the events surrounding the accident and the existence of independent contractor agreements show that Diaz and Sanchez were working for T. Disney, as envisioned by the broad language of the employee exclusion.  See Compl. Ex. B ¶ 91–93; T. Disney Answer ¶ 24–25; see also Compl. Ex. C at 2–3, Sept. 13, 2022, ECF No. 77-3; [Atain] Answer to Counterclaim Ex. 1 at 14, Oct. 17, 2022, ECF No. 86-1.

## IV. Defense Costs

Atain requests that the Court enter an order allowing it to withdraw from T. Disney's defense and recoup defense costs.  See Atain Mot. at 25.  T. Disney does not indicate that it opposes this request, in the event that the Court finds no duty to defend.  See T. Disney Mot. at 23–24; see also T. Disney Resp. at 19–21.  For the following reasons, Atain's request is granted.

Insurers may recover attorneys' fees incurred in defending an insured when there is no duty to defend, and when the insurer timely issues a reservation of rights letter.  See State Farm Mut. Auto. Ins. Co. v. Coker, 505 Fed. Appx. 824, 826 (11th Cir. 2013) (citing Colony Ins. Co. v. G & E Tires & Serv., Inc., 777 So. 2d 1034, 1039 (Fla. 1st Dist. Ct. App. 2000)).  Generally, the law of contracts governs, the right to reimbursement such that an insured's acceptance of an insurer's offer to defend under reservation entitles the insurer to fees, if reimbursement was a condition of the

**OPINION AND ORDER - 25**

Case No.: 3:21-cv-01097-CRK

reservation.  See Nationwide Mut. Fire Ins. Co. v. Royall, 588 F. Supp. 2d 1306, 1317 (M.D. Fla. 2008) (collecting cases).

Here, Atain offered to defend T. Disney in the Estate and Sanchez lawsuits under reservation.  On March 8, 2021, Atain issued a reservation of rights letter, informing T. Disney that it would defend the Sanchez lawsuit, but that it "expressly reserves the right . . . to recoup any defense costs incurred from Disney should it be determined that there is no coverage for the Lawsuit."  Compl. Ex. D at 3, Sept. 13, 2022, ECF No. 77-4; T. Disney Answer ¶ 30.  On August 3, 2022, Atain issued a second reservation of rights letter, informing T. Disney that it would defend the Estate lawsuit, but retained the right to "recoup any costs incurred."  Compl. Ex. F at 3, Sept. 13, 2022, ECF No. 77-6; T. Disney Answer ¶ 32.  Because T. Disney accepted Atain's tenders of defense under reservation, see T. Disney Mot. at 10, 11, it agreed to reimburse costs in the event that Atain had no duty to defend.  See Royall, 588 F. Supp. 2d at 1317.  Additionally, T. Disney has not indicated that it opposes Atain's request to recoup defense costs.  See T. Disney Mot. at 23–24; see also T. Disney Resp. at 19–21.  Therefore, Atain's request is granted, and Atain may withdraw from T. Disney's defense and recoup its defense costs.

## CONCLUSION

For the foregoing reasons, Atain's motion for summary judgment, see ECF No. 111, and Evanston's motion for summary judgment, see ECF No. 159, are granted with respect to their individual claims as well as T. Disney's and the Estate's counterclaims.  See T. Disney Answer at 22–23; see also [Estate] Answer and Affirm.

**OPINION AND ORDER - 26**

Case No.: 3:21-cv-01097-CRK

Defenses Pl.'s Fourth Am. Compl. & Counterclaim, Sept. 27, 2022, ECF No. 80; [Estate] Answer and Affirm. Defenses [Evanston's] Am. Interv. Compl., Oct. 26, 2022, ECF No. 88. T. Disney's motion for summary judgment on Atain's complaint, its own counterclaim, and the Estate's counterclaim, <u>see</u> ECF No. 120, is denied, and T. Disney's motion to dismiss Evanston's intervening complaint, <u>see</u> ECF No. 87, is denied as moot. The Court will enter a separate judgment in accordance with Federal Rule of Civil Procedure 58.

<u>/s/ Claire R. Kelly</u>
Claire R. Kelly, Judge[*]

Dated:       September 15, 2023
             New York, New York

---

[*] Judge Claire R. Kelly, of the United States Court of International Trade, sitting by designation.

**OPINION AND ORDER - 27**